**ALLEGHENY INTERNATIONAL, INC.**

v.

**ALLEGHENY LUDLUM STEEL CORPORATION, Appellant.**

**Nos. 90–3188, 90–3218.**

United States Court of Appeals, Third Circuit.

Argued Sept. 25, 1990.

Decided Nov. 29, 1990.

Kevin P. Lucas (argued), Jeffrey G. Brooks, Manion McDonough & Lucas, P.C., Pittsburgh, Pa., for appellant.

Dennis J. Lewis (argued), Laura A. Meaden, Cohen & Grigsby, Pittsburgh, Pa., for appellee.

Before SLOVITER, BECKER and ROSENN, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

These consolidated appeals raise a number of interesting questions of bankruptcy procedure, centering on whether a defendant in an adversary action commenced in bankruptcy court has a seventh amendment right to a jury trial. Before reaching these questions, however, we must determine our jurisdiction. In particular, we must address: (1) whether we have jurisdiction, pursuant to 28 U.S.C. § 1291, over defendant's appeal of the district court's order denying its motion for withdrawal of reference of the adversary action; and (2) whether we have jurisdiction, pursuant to 28 U.S.C. § 158(d), over defendant's appeal of the district court's order dismissing for

lack of jurisdiction defendant's appeal of the bankruptcy court's refusal to transfer the adversary action to the district court. Both attempts to get the case before the district court were initiated by defendant in an effort to secure a jury trial, which, defendant apparently assumed, could only be conducted in the district court. We must consider, additionally, whether, given the fundamental nature of the constitutional right at stake, we should consider this case on mandamus pursuant to 28 U.S.C. § 1651. *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962) (jury trial right protectible by mandamus).

For a number of reasons, most notably the pendency in the bankruptcy court of a motion by defendant for judgment on the pleadings, we conclude that we are without jurisdiction to hear defendant's appeals, notwithstanding the "flexible" finality jurisprudence applicable to bankruptcy appeals, *see In re Pruitt*, 910 F.2d 1160 (3d Cir.1990) (§ 1291); *Wheeling–Pittsburgh Steel Corp. v. McCune*, 836 F.2d 153 (3d Cir.1987) (§ 158(d)). If granted by the bankruptcy court, defendant's motion for judgment on the pleadings would dispose of the debtor's adversary action as a matter of law, would obviate the need for a jury trial, and would render moot defendant's instant appeals. In light of this possibility, we decline to issue what would be, in effect, an advisory opinion concerning defendant's entitlement to a jury trial under the seventh amendment. For the same reason, we also decline to exercise mandamus jurisdiction under § 1651, even though defendant's appeals raise a seventh amendment issue. Defendant's appeals accordingly will be dismissed.

## I. FACTS AND PROCEDURAL HISTORY

Between mid–1979 and December 26, 1980, Allegheny Ludlum Steel Corporation ("ALSC"), a steel products manufacturing company and the predecessor-in-interest of defendant Allegheny Ludlum Corporation ("Ludlum"), was a wholly-owned subsidiary of plaintiff/debtor Allegheny International,

Incorporated ("AI"). In 1980, AI sold to a management group, incorporated as LSC Corporation, all of the outstanding capital stock in ALSC. After the sale, LSC Corporation was merged into ALSC, which subsequently became defendant Ludlum. The principal document which effected this transaction was an agreement dated November 26, 1980 ("the November 1980 Agreement").

Before consummating the sale, the parties recognized that certain tax refunds would be payable to Ludlum, even though the refunds resulted from tax attributes of AI prior to the sale. Ludlum therefore agreed in § 12(d) of the November 1980 Agreement that it would reimburse AI if it received such tax refunds. The parties similarly anticipated that Ludlum might incur tax liabilities after the closing date as a result of transactions occurring before the sale. AI accordingly agreed in § 12(e) of the November 1980 Agreement that it would reimburse Ludlum if Ludlum incurred such tax liabilities. Later, because Ludlum did not have an operational risk management program in place at the time of the sale, AI also agreed in a letter agreement dated August 10, 1981 ("the Letter Agreement") that it would continue to provide insurance coverage for Ludlum until Ludlum obtained its own insurance. The Letter Agreement required Ludlum to reimburse AI for all expenses incurred in providing such interim insurance coverage.

On February 20, 1988, AI filed a voluntary petition for reorganization under Chapter 11 in the bankruptcy court for the Western District of Pennsylvania. On May 27, 1988, Ludlum initiated proceedings against AI in bankruptcy court by filing a proof of claim. This claim involved only one liquidated matter—a $51,994 tax claim. Ludlum asserted that: (1) in October of 1984, it paid AI $51,994 for the use, with respect to its 1983 tax year, of certain investment tax credits relating to Oklahoma Tubular Products Company, a former affiliate of AI ("the 1983 Oklahoma Tubular Claim"); and (2) subsequent to Ludlum's payment of the $51,994, the Internal Revenue Service ("IRS") disallowed Ludlum's use of these tax credits. Ludlum

therefore contended that it was entitled to reimbursement from AI of the $51,994.

In completing the proof of claim form, Ludlum identified as potential setoffs or counterclaims "possible recoupment claims in respect of tax benefits pursuant to Section 12(d) of the [November 1980] Agreement." Ludlum, as a precautionary matter, also listed all "claims for reimbursement of tax detriments pursuant to § 12(e) of the [November 1980] Agreement." Both parties agree, however, that Ludlum's proof of claim contained only one liquidated item—the 1983 Oklahoma Tubular Claim.

The parties eventually entered into a stipulation for partial allowance of Ludlum's proof of claim. Under the stipulation, Ludlum was to receive a $51,994 unsecured claim against AI's estate. Moreover, if Ludlum ultimately received a distribution less than $51,994, the stipulation entitled it to setoff the deficiency against any amount due AI under § 12(d) of the November 1980 Agreement. Likewise, if Ludlum prevailed in its dispute with the IRS concerning the 1983 Oklahoma Tubular Claim after already receiving a distribution on its claim, the stipulation provided that Ludlum must reimburse to AI any amount received in excess of $51,994. The bankruptcy court entered an order approving the stipulation on February 23, 1989.

In September of 1989, approximately seven months after the parties entered into the stipulation and before Ludlum received a distribution on its claim, the IRS reversed its prior disallowance of Ludlum's use of the 1983 Oklahoma Tubular Claim. This reversal, Ludlum points out, enabled it to realize the full value of the 1983 Oklahoma Tubular Claim, and, it submits, thereby mooted its proof of claim and rendered unnecessary its continued participation in AI's bankruptcy.[1]

On November 28, 1989, AI filed an adversary proceeding against Ludlum in bankruptcy court alleging breach of contract.

AI claimed, in particular, that Ludlum was liable under § 12(d) of the November 1980 Agreement for a $2,483,067 tax refund allegedly received by Ludlum in 1989 with respect to its 1981 tax year. AI also averred that under the terms of the Letter Agreement, Ludlum was required to reimburse AI for certain expenses it incurred in providing interim insurance coverage between 1976 and 1980.

On January 10, 1990, Ludlum answered AI's complaint, demanded a jury trial pursuant to Fed.R.Civ.P. 38(b), and moved to transfer AI's adversary action to the district court. On the same day, Ludlum also moved the bankruptcy court for judgment on the pleadings based on an agreement between the parties dated February 19, 1986. Under this agreement, Ludlum redeemed all of its preferred stock that was still owned by AI. As part of the consideration for this repurchase, AI released Ludlum from any and all possible claims relating in any manner to events or transactions occurring prior to February 19, 1986, including all possible claims arising under the November 1980 Agreement. Ludlum contends that AI's adversary action is barred by this release and thus must be dismissed as a matter of law. Ludlum's motion for judgment on the pleadings is still pending before the bankruptcy court.

At a hearing on January 25, 1990, the bankruptcy court denied Ludlum's demand for a jury trial and its motion to transfer. Because Ludlum had earlier filed a proof of claim against AI, the bankruptcy court, relying on *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), concluded that it had jurisdiction over all counterclaims asserted by AI against Ludlum. In denying Ludlum's demand for a jury trial, the bankruptcy court further relied on the fact that AI's claim involved a contract cause of

---

1. On March 13, 1990, during the pendency of these appeals, Ludlum moved the bankruptcy court for leave to withdraw its proof of claim. AI contends that Ludlum improperly placed this motion before this court by including it in its brief and the reproduced record. AI further challenges the accuracy of the factual allegations set forth in the motion and maintains that the motion is without merit. Because this motion was not before the district court when it entered the orders at issue here, we will not consider it.

action, not a personal injury claim, apparently in reference to 28 U.S.C. § 1411(a).[2]

On February 5, 1990, Ludlum appealed to the district court the bankruptcy court's order denying its motion to transfer. At the same time, Ludlum moved the district court to withdraw the reference of AI's adversary proceeding. The district court, on February 12, 1990, denied Ludlum's motion for withdrawal of reference; Ludlum appealed that ruling to this court (No. 90–3188). A month later, the district court dismissed Ludlum's appeal from the bankruptcy court's order, stating that the order was interlocutory and hence not appealable; Ludlum also appealed that order to this court (No. 90–3218). On April 3, 1990, AI moved this court to dismiss Ludlum's appeals on the ground that the district court's orders are not final.

On appeal, Ludlum claims that it has a seventh amendment right to a jury trial in AI's adversary proceeding and that this proceeding must be transferred to the district court. AI, on the other hand, maintains that Ludlum, by filing a proof of claim in bankruptcy court, consented to the bankruptcy court's jurisdiction and lost its right to a jury trial.

## II. JURISDICTION

### A. *Statutory Right to Appeal*

#### 1. Section 1291

■ In order to ascertain whether we have jurisdiction over Ludlum's appeals, we must analyze each separately. Appeal No. 90–3188 challenges the district court's order denying Ludlum's motion for withdrawal of reference of AI's adversary proceeding. The district court issued this order pursuant to its original jurisdiction. In such a situation, we cannot predicate our jurisdiction on the appeal provision that is generally applicable to bankruptcy cases, 28 U.S.C. § 158(d). *See Metro Transporta-*

tion Co. v. North Star Reinsurance Co., 912 F.2d 672, 676 (3d Cir.1990); *United States v. Nicolet, Inc.,* 857 F.2d 202, 204 (3d Cir.1988). Rather, the only avenue for appeal of such an order is our general jurisdictional statute, 28 U.S.C. § 1291.

■ Section 1291 confers upon us jurisdiction over "appeals from all final decisions of the district courts." A district court's decision is final and appealable for purposes of § 1291 "only when the decision 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 108 S.Ct. 1133, 1136, 99 L.Ed.2d 296 (1988) (quoting *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 634, 89 L.Ed. 911 (1945)). In the bankruptcy context, however, we apply a less rigorous standard of finality under § 1291. *See In re Pruitt,* 910 F.2d 1160, 1165 (3d Cir.1990); *In re Amatex Corp.,* 755 F.2d 1034, 1039 (3d Cir.1985). "Nonetheless, our relaxed view of bankruptcy orders cannot impart appellate jurisdiction without some vestige of finality." *Pruitt,* 910 F.2d at 1166. It is well-settled that orders granting or denying motions for withdrawal of reference are not final. *See e.g., id.; In re Powelson,* 878 F.2d 976, 979 (7th Cir.1989); *In re Kemble,* 776 F.2d 802, 806 (9th Cir.1985). Therefore, despite our flexible view of finality, appeal No. 90–3188 is interlocutory and unreviewable under § 1291.

#### 2. Section 158(d)

■ Appeal No. 90–3218, by contrast, challenges an order of the bankruptcy court denying Ludlum's motion for transfer. This appeal was taken from an order of the district court dismissing for lack of jurisdiction Ludlum's appeal from the bankruptcy court's order. In this context, we must look to 28 U.S.C. § 158(d) for jurisdic-

---

**2.** Subsection 1411(a) provides:
Except as provided in subsection (b) of this section, this chapter and title 11 do not affect any right to trial by jury that an individual has under applicable nonbankruptcy law with regard to a personal injury or wrongful death tort claim.

We note in this regard footnote three in the Supreme Court's *Granfinanciera* opinion. *See* 109 S.Ct. at 2789 n. 3 (suggesting that § 1411(a), regardless of how it is interpreted, does not affect the right to a jury trial under the seventh amendment).

tion. That section affords us jurisdiction over appeals from final orders entered by the district courts in their appellate capacity in bankruptcy cases. As under § 1291, "[w]e [also] have consistently recognized that finality [under § 158(d)] must be viewed pragmatically." *Wheeling–Pittsburgh Steel Corp. v. McCune*, 836 F.2d 153, 157 (3d Cir.1987); *see also In re Taylor*, 913 F.2d 102, 104 (3d Cir.1990) ("In the bankruptcy context, finality is accorded a somewhat flexible, pragmatic definition."). However, "[t]he application of this less stringent definition of finality in bankruptcy cases is not without limitation." *In re Meyertech Corp.*, 831 F.2d 410, 414 (3d Cir.1987).

To determine whether the order appealed from is final, we must "balanc[e] a general reluctance to expand traditional interpretations regarding finality and a desire to effectuate a practical termination of the matter before us." *Id.* The factors to consider in this balancing process include "the impact of the disputed issue on the assets of the bankruptcy estate, the necessity for additional fact-finding on a remand, the preclusive effect of this court's decision on the merits of subsequent litigation, and the furtherance of judicial economy." *Wheeling–Pittsburgh*, 836 F.2d at 158 (citing *Meyertech*, 831 F.2d at 414).

█ Ludlum offers three reasons why the bankruptcy court's order denying its motion for transfer is "final" under § 158(d). Ludlum claims, first, that judicial economy would be fostered by allowing an appeal at this stage of the proceedings. If AI's adversary action proceeds to verdict without a jury, and the bankruptcy court's denial of Ludlum's jury demand is thereafter reversed, that circumstance alone would constitute reversible error and would necessitate a new trial. *See E.E.O.C. v. Corry Jamestown Corp.*, 719 F.2d 1219, 1225 (3d Cir.1983) ("[D]enial of a trial by jury is reversible error unless a directed verdict would have been appropriate.").

Ludlum argues, therefore, that immediate appellate review is appropriate because it will avoid the possibility of two trials.

Ludlum further contends that the bankruptcy court's order should be deemed final because it effectively disposes of Ludlum's constitutional right to a jury trial. In *In re West Electronics, Inc.*, 852 F.2d 79 (3d Cir.1988), a creditor moved to lift the automatic stay on the basis of an alleged statutory right to terminate a contract with the debtor. The bankruptcy court was unpersuaded by the creditor's statutory argument and thus denied its motion to lift the stay. Because the "bankruptcy court ... rejected the [creditor's] legal positions," we held that the court's order was final pursuant to § 158(d). *Id.* at 82. The bankruptcy court in this case rejected, as a matter of law, Ludlum's seventh amendment right to a jury trial. As a result, Ludlum contends that the reasoning of *West Electronics* counsels that the bankruptcy court's order be considered final.

Ludlum asserts, finally, that the bankruptcy court's order is appealable because its right to a jury trial is purely a legal question that requires no additional fact-finding. *See Wheeling–Pittsburgh*, 836 F.2d at 158 (the lack of a need for further factfinding listed as a reason for finding appellate jurisdiction). Interestingly, AI maintains that this factor cuts the other way. AI contends that we should not entertain an appeal at this time because our decision will not obviate the need for fact-finding on remand. *See Meyertech*, 831 F.2d at 414. Although our case law offers authority for both arguments, the fact that Ludlum's appeal raises only a legal question, we think, militates in favor of finality in this instance.[3]

In sum, we agree that the question presented is purely legal and that it might be pragmatically sound to hear Ludlum's appeal now and thereby remove the prospect of two trials. We nonetheless con-

3. We note also that the Second Circuit in *In re Ben Cooper, Inc.*, 896 F.2d 1394 (2d Cir.), *cert. granted*, —— U.S. ——, 110 S.Ct. 3269, 111 L.Ed.2d 779 (1990), considered on direct appeal a defendant's entitlement to a jury trial prior to the termination of the underlying bankruptcy proceeding. However, that opinion is of little help to us, for it does not even discuss appellate jurisdiction.

clude that the bankruptcy court's order is not "final" under § 158(d) for two reasons. First, the resolution of Ludlum's appeal—which, in a sense, simply raises a question of forum selection—will not affect the assets in AI's estate. This factor was accorded substantial weight by the *Meyertech* court in ascertaining whether the order appealed from was final. 831 F.2d at 414 ("First and *most important,* ... our decision will undoubtedly impact the assets of the estate." (emphasis added)). Second and more fundamentally, however, we think that Ludlum's pending motion for judgment on the pleadings divests the bankruptcy court's order of its finality.

As noted above, Ludlum seeks to dismiss AI's adversary proceeding based on a release executed by AI in February of 1986. This release, Ludlum maintains, discharges it of all liability for claims arising under the November 1980 Agreement and relating to events occurring prior to February 19, 1986. Accordingly, Ludlum claims that AI's adversary proceeding is barred as a matter of law. If granted, Ludlum's motion to dismiss would eliminate the need for this appeal. In substance, therefore, Ludlum asks us to issue an advisory ruling that in the event it does not prevail on its motion to dismiss AI's action as a matter of law, it is then entitled to a jury trial on all disputed factual questions.

In light of the pendency of Ludlum's motion for judgment on the pleadings, we hold that the bankruptcy court's order is not final. We need not decide whether the orders would be appealable in the absence of such a pending motion, because the motion for judgment on the pleadings is potentially dispositive. Despite the flexible definition accorded "finality" in the bankruptcy context, we believe that the bankruptcy court's order denying Ludlum's motion for transfer cannot be final until the court disposes of Ludlum's motion for judgment on the pleadings.

## B. *Mandamus*

■ Because the orders at issue implicate the constitutional right to trial by jury, Ludlum also asks us to construe its appeals as a petition for mandamus. There is ample authority for us to do just that. *See Pruitt*, 910 F.2d at 1167 ("[W]e shall treat [creditor's] appeal as a request for a writ of mandamus...."); *Gold v. Johns–Manville Sales Corp.*, 723 F.2d 1068, 1074 (3d Cir.1983) ("[F]rom time to time this Court has chosen to treat improper claims to an appeal as of right as petitions for mandamus...."); *Cheyney State College Faculty v. Hufstedler*, 703 F.2d 732, 736 (3d Cir.1983) ("A court may ... treat an attempted appeal ... as a petition for mandamus.").

■ The All Writs Act, 28 U.S.C. § 1651(a), empowers us to issue writs of mandamus in aid of our jurisdiction. *See United States v. Martinez–Zayas*, 857 F.2d 122, 127 (3d Cir.1988). It is axiomatic, however, that "the remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34, 101 S.Ct. 188, 189, 66 L.Ed.2d 193 (1980) (per curiam). Therefore, " '[t]he traditional use of the writ in aid of appellate jurisdiction both at common law and in the federal courts has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.' " *Mallard v. United States Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296, 109 S.Ct. 1814, 1822, 104 L.Ed.2d 318 (1989) (quoting *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943)).

Despite courts' general reluctance to issue writs of mandamus, the Supreme Court has stated that it is "the responsibility of the Federal Courts of Appeals to grant mandamus where necessary to protect the constitutional right to trial by jury." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 472, 82 S.Ct. 894, 897, 8 L.Ed.2d 44 (1962). The plaintiff in *Dairy Queen* sought, among other things, money damages for defendant's alleged breach of a licensing contract. The district court refused to grant defendant's demand for a trial by jury, and the court of appeals denied defendant's request for mandamus. The Supreme Court, however, reversed, holding

that because plaintiff's complaint involved a "legal" claim, defendant was entitled to a jury trial. More importantly for present purposes, the Court stated that "[t]he Court of Appeals should have corrected the error of the district judge by granting the petition for mandamus." *Id.* at 479–80, 82 S.Ct. at 900–01. The Court wrote that the court of appeals' refusal to consider defendant's petition "seemed inconsistent with protections already clearly recognized for the important constitutional right to trial by jury." *Id.* at 470, 82 S.Ct. at 896. *See also Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 511, 79 S.Ct. 948, 957, 3 L.Ed.2d 988 (1959) ("[T]he right to grant mandamus to require jury trial where it has been improperly denied is settled.").

*Dairy Queen* and *Beacon Theatres* have begotten an impressive progeny. In fact, this court, in *Eldredge v. Gourley*, 505 F.2d 769, 770 (3d Cir.1974) (per curiam), relying on both cases, noted that "a writ of mandamus is an appropriate means of protecting the right to jury trial." *See also Mondor v. United States Dist. Court for the Cent. Dist. of Cal.*, 910 F.2d 585, 586 (9th Cir.1990) ("[T]he wrongful denial of a jury trial is an appropriate basis for [mandamus] relief."); *In re Vorpahl*, 695 F.2d 318, 319 (8th Cir.1982) ("The remedy of mandamus in determining the right to a jury trial is firmly settled."); *In re Zweibon*, 565 F.2d 742, 746 (D.C.Cir.1977) (per curiam) ("[D]enial of a jury trial may be reviewed on a petition for a writ in the nature of mandamus."); *Higgins v. Boeing Co.*, 526 F.2d 1004, 1006 (2d Cir.1975) (per curiam) ("Our power to preserve the important right to trial by jury by mandamus is clear." (citation omitted)).

Further, the appropriateness of mandamus to protect the right to jury trial was addressed specifically in the bankruptcy context in *In re Kaiser Steel Corp.*, 911 F.2d 380 (10th Cir.1990). The debtor in that case commenced an adversary action in bankruptcy court, and the defendants demanded a jury trial. After the bankrupt-cy court issued an order striking the defendants' jury demands, and the district court affirmed the order, defendants petitioned for writ of mandamus. The Tenth Circuit, relying in part on *Dairy Queen*, held that "if the ... defendants are entitled to a jury trial ... the writ should issue." *Id.* at 388.[4]

In view of the teachings of *Dairy Queen, Kaiser Steel*, and our prior decision in *Eldredge*, we acknowledge that the seventh amendment entitlement to a jury trial is a fundamental right that is generally protectible through mandamus. Yet, given our general hesitance to issue writs of mandamus, we think that the pendency of Ludlum's motion for judgment on the pleadings militates against our exercise of mandamus jurisdiction in this instance. As we emphasized above, Ludlum seeks, in essence, an advisory opinion from this court that in the event the bankruptcy court denies its motion for judgment on the pleadings, it is then entitled to a jury trial. We decline to pursue the extraordinary remedy of mandamus in order to issue such an advisory opinion.

### III. CONCLUSION

For the above reasons, we will dismiss Ludlum's appeals for lack of appellate jurisdiction. Treating these appeals as petitions for a writ of mandamus, the petitions will be denied.

---

**4.** Similarly, the Eighth Circuit, in *In re United Missouri Bank of Kansas City, N.A.*, 901 F.2d 1449 (8th Cir.1990), availed itself of mandamus jurisdiction in another bankruptcy case involving the right to a jury trial.