16 F.3d 525
 25 Bankr.Ct.Dec. 404, Bankr. L. Rep. P 75,723
 In re John PASQUARIELLO, Debtor.
RESOLUTION TRUST CORPORATION, as Receiver of North Jersey
Federal Savings Association
v.
John PASQUARIELLO; Elizabeth S. Pasquariello, a/k/a E.S.P. Enterprises
John A. Casarow, Jr., Trustee
Elizabeth S. Pasquariello, Appellant.
 No. 93-5400.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 19, 1994.
Decided Feb. 16, 1994.
 
 George H. Hulse, Joel E. Berman (argued), Hulse & Germano, Burlington, NJ, for Appellant.
 Daniel C. Fleming, Williams, Caliri, Miller & Otley, Wayne, NJ, for Appellee Resolution Trust Corporation.
 David F. Raczenbek (argued), Casarow, Casarow & Kienzle, Bridgeton, NJ, for Appellee John A. Casarow, Jr.
 Before: SLOVITER, Chief Judge, SCIRICA and LEWIS, Circuit Judges
 OPINION OF THE COURT
 SLOVITER, Chief Judge.
 
 
 1
 Before us is an appeal of Elizabeth Pasquariello, wife of the debtor, from the order of the district court denying her motion to withdraw its reference of jurisdiction from the bankruptcy court. Appellant sought a jury trial in the district court. The district court denied the motion to withdraw reference, after concluding that appellant had no right to a jury trial under the Seventh Amendment for an action brought against her to set aside an allegedly fraudulent conveyance of real property from her debtor husband. We confront the issue of our appellate jurisdiction in the first instance.
 
 I.
 FACTS AND PROCEDURAL HISTORY
 
 2
 In May 1992, John Pasquariello, Elizabeth's husband, filed a petition for Chapter 7 bankruptcy. The Resolution Trust Corporation (RTC) (as receiver for the insolvent North Jersey Federal Savings and Loan Association) and the trustee in bankruptcy for John's estate, John Casarow, Jr., filed complaints alleging, inter alia, that John fraudulently conveyed certain real properties to his wife Elizabeth with the intent to hinder his creditors. Plaintiffs invoked provisions of the Bankruptcy Code, 11 U.S.C. Secs. 544(b)[1], 548(a) (1988)[2], the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), 12 U.S.C. Sec. 1821(d)(17) (Supp. IV 1992)[3]; and the New Jersey Uniform Fraudulent Transfer Act, N.J.Stat.Ann. Secs. 25:2-3[4], 25:2-29 (West Supp.1993)[5], each of which would permit them, were they successful on the merits, to avoid the transfers and recover the property or, if the court so ordered, the value of such property, from the transferee. In addition, plaintiffs sought a variety of equitable remedies in case the property had been transferred from Elizabeth, and to recoup any benefits Elizabeth had gained from possession of the property, including an accounting, constructive trust, and equitable lien.[6]
 
 
 3
 Elizabeth denied the allegations and sought a jury trial. She petitioned the district court to withdraw the reference pursuant to 28 U.S.C. Sec. 157(d) (1988) for this purpose. In holding that the bankruptcy court was the appropriate forum, the district court relied on the Supreme Court's decision in Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), and this court's decision in Cox v. Keystone Carbon Co., 861 F.2d 390 (3d Cir.1988). The district court reasoned that "[w]hile the RTC complaint did contain a reference to compensatory damages, the equitable relief provided for in the statutes was the plaintiffs' objective." On this appeal, Elizabeth argues that the district court's action denied her Seventh Amendment right to a jury trial.
 
 II.
 JURISDICTION
 
 4
 Before we can review the merits of Elizabeth's claim, we must determine whether we have appellate jurisdiction over the district court's order. We have no appellate jurisdiction under 28 U.S.C. Sec. 158(d) (1988) because the district court acts pursuant to its original jurisdiction when it denies a motion to withdraw the reference. See Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp., 920 F.2d 1127, 1131 (3d Cir.1990). Nor do we have jurisdiction under 28 U.S.C. Sec. 1291 (1988), our traditional jurisdictional base, because the order is not "final," despite our flexible view of finality in the bankruptcy context. Our recent holding in Allegheny, that "orders granting or denying motions for withdrawal of reference are not final," 920 F.2d at 1131, is as explicit as it can be on this point. See also In re Pruitt, 910 F.2d 1160, 1166 (3d Cir.1990) (citing similar holdings from other circuits).
 
 
 5
 Moreover, we reject the appellant's contention that we have jurisdiction under the collateral order doctrine. Once again we have authority directly on point. In Pruitt, 910 F.2d at 1166, we held that an order granting or denying withdrawal of the reference does not qualify as a collateral order both because such an order simply determined the proper forum for the proceeding, and therefore does not resolve an important issue, and because such an order remains reviewable on final judgment.
 
 
 6
 Appellant therefore asks us to follow some of our earlier cases and construe her appeal as a petition for a writ of mandamus. See Allegheny, 920 F.2d at 1133; Pruitt, 910 F.2d at 1167. We have the power to issue a writ of mandamus pursuant to the All Writs Act, 28 U.S.C. Sec. 1651(a) (1988), in exceptional cases where the traditional bases for jurisdiction do not apply. And indeed, as we noted in Allegheny, mandamus may be appropriate when the issue concerns the Seventh Amendment entitlement to a jury trial, a fundamental right. See 920 F.2d at 1134 (collecting cases); see also In re Jensen, 946 F.2d 369, 371 (5th Cir.1991) (writ of mandamus appropriate means to determine whether right to jury trial exists in bankruptcy proceeding); In re Hooker Invs., Inc., 937 F.2d 833, 837 (2d Cir.1991) (same).
 
 
 7
 However, it does not need a string citation to reiterate that mandamus must be carefully circumscribed and used "only in extraordinary situations," for it is a "drastic" remedy. Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 34, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980) (per curiam). Otherwise, the carefully crafted rules of limited interlocutory review would be circumvented through the vehicle of mandamus.
 
 
 8
 It follows, as the Supreme Court has instructed the courts of appeals, that the petitioner seeking mandamus must satisfy the "burden of showing that [her] right to issuance of the writ is 'clear and indisputable.' " Bankers Life & Casualty Co. v. Holland, 346 U.S. 379, 384, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953) (quoting United States v. Duell, 172 U.S. 576, 582, 19 S.Ct. 286, 287, 43 L.Ed. 559 (1899)). This Court has consistently applied this stringent standard. See, e.g., PAS v. Travelers Ins. Co., 7 F.3d 349, 357 (3d Cir.1993) (denying writ of mandamus because it was not clear and indisputable that state claims were not preempted by ERISA); Sunbelt Corp. v. Noble, Denton & Assocs., Inc., 5 F.3d 28, 30, 33 (3d Cir.1993) (granting writ because it was clear and indisputable that district court did not have the legal authority to transfer a case to a district where personal jurisdiction was lacking); Travellers Int'l AG. v. Robinson, 982 F.2d 96, 98 (3d Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1946, 123 L.Ed.2d 651 (1993) (denying writ of mandamus because it was not clear and indisputable that petitioner was entitled to jury trial).
 
 III.
 RIGHT TO A JURY TRIAL
 
 9
 Essentially, Elizabeth argues that it is indisputable that she has a right to a jury trial on the claim of the trustee and RTC that the debtor, her husband, fraudulently conveyed property to her. We do not find the issue as clear as does appellant. The district court denied Elizabeth's motion for a jury trial in reliance on the Supreme Court's decision in Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). In that case, the Chapter 11 bankruptcy trustee sought to "avoid what it alleged were constructively and actually fraudulent transfers [to Granfinanciera and another company] and to recover damages, costs, expenses, and interest under 11 U.S.C. Secs. 548(a)(1) and (a)(2), 550(a)(1)." Id. at 36, 109 S.Ct. at 2787. Granfinanciera's request for a trial by jury on the fraudulent conveyance and/or preferential transfer claim was ultimately upheld by the Supreme Court on Seventh Amendment grounds.[7]
 
 
 10
 The Court articulated a three-part test for determining when a person who had not submitted claims against a bankruptcy estate was entitled to a jury trial under the Seventh Amendment.[8] The Court noted that first, "we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." Id. at 42, 109 S.Ct. at 2790. Second, "we examine the remedy sought and determine whether it is legal or equitable in nature. The second stage of this analysis is more important than the first." Id. (citation omitted). If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, "we must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder." Id.
 
 
 11
 In applying this analysis, the Supreme Court noted that actions to recover "fraudulent conveyance[s] of a determinate sum of money" (the claim in Granfinanciera ) had been brought at law, and only at law, in late 18th-century England. Id. at 43-47, 109 S.Ct. at 2790-2793. Second, since the trustee was seeking only return of the money, this was equivalent to an action for damages, the classic legal remedy. Indeed, the Court noted that the trustee's suit could not go forward in equity because an adequate remedy was available at law. See id. at 48-49 & n. 7, 109 S.Ct. at 2793-2794 & n. 7. Finally, the Court held that the fact that the claim was intertwined with the bankruptcy proceedings did not empower Congress to assign the adjudication of such a claim to judges. See id. at 52-55, 109 S.Ct. at 2795-2797. The Court eschewed deciding many of the difficult issues with respect to jury trials and fraudulent conveyance claims in bankruptcy, confining itself to the Seventh Amendment because the statutory provision of the 1984 Amendment to the Bankruptcy Act regarding jury trials, which the Court termed "notoriously ambiguous," was inapplicable to this case. Id. at 40-41 n. 3, 109 S.Ct. at 2789-2790 n. 3.
 
 
 12
 On the other hand, every court of appeals to have considered the issue, albeit prior to Granfinanciera, held that any attempt to remedy a fraudulent conveyance of real property through a set aside or avoidance was a matter for the equity courts and that no right to a jury trial attached. See, e.g., In re Graham, 747 F.2d 1383, 1387-88 (11th Cir.1984); Whitlock v. Hause, 694 F.2d 861, 863-66 (1st Cir.1982); Duncan v. First Nat'l Bank, 597 F.2d 51, 55-56 (5th Cir.1979); Hyde Properties v. McCoy, 507 F.2d 301, 306 (6th Cir.1974) (dictum); Senchal v. Carroll, 394 F.2d 797, 797-99 (10th Cir.), cert. denied, 393 U.S. 979, 89 S.Ct. 448, 21 L.Ed.2d 440 (1968); Damsky v. Zavatt, 289 F.2d 46, 53-54 (2d Cir.1961); Johnson v. Gardner, 179 F.2d 114, 117 (9th Cir.1949), cert. denied, 339 U.S. 935, 70 S.Ct. 661, 94 L.Ed. 1353 (1950).[9] This alone should give us some pause as to the applicability of Granfinanciera in this different fact situation.
 
 
 13
 For example, in Graham the court was faced with an attempt by a bankruptcy trustee to avoid a fraudulent conveyance of real property under a state law, through 11 U.S.C. Sec. 544(b), "which renders null and void conveyances made by debtors to defraud or delay their creditors." 747 F.2d at 1386-87. The court noted that in England, the courts of law and equity exercised concurrent jurisdiction over such actions, but decided that since the trustee sought only an equitable remedy, there was no right to a jury trial. See id. at 1387. In fact, in Granfinanciera itself, the Court, although it termed the holdings in Graham and Damsky "questionable," distinguished these cases because they involved "the equitable remedy of setting aside an alleged fraudulent conveyance of real estate by a bankrupt." Granfinanciera, 492 U.S. at 46 n. 5, 109 S.Ct. at 2792 n. 5 (emphasis in original). The claim against Elizabeth also involves a trustee's efforts to set aside a real estate conveyance and therefore may be more analogous to the court of appeals cases than to Granfinanciera, which the Court repeatedly emphasized involved an "action to recover an alleged fraudulent conveyance of a determinate sum of money," id. at 46-47, 109 S.Ct. at 2793 (emphasis added), an action that a court of equity would not have adjudicated.
 
 
 14
 The distinction is significant in at least two respects. First, with regard to its historical antecedents, it is clear that English courts of law and equity in late 18th century had concurrent jurisdiction over fraudulent conveyance actions for land. See id. at 45, 109 S.Ct. at 2792. An action to recover possession of real property, often known as ejectment, was an action at law. See id.; see also Pernell v. Southall Realty, 416 U.S. 363, 373, 94 S.Ct. 1723, 1728, 40 L.Ed.2d 198 (1974) ("by a variety of intricate fictions, ejectment eventually developed into the primary means of trying either the title to or the right to possession of real property"); Amoco Oil Co. v. Torcomian, 722 F.2d 1099, 1103 (3d Cir.1983) (ejectment is an action at law). On the other hand, an action to set aside a fraudulent conveyance of real estate was usually heard in equity. See Granfinanciera, 492 U.S. at 44-46, 109 S.Ct. at 2791-2792; Hobbs v. Hull, 1 Cox 445, 29 Eng.Rep. 1242 (Ch. 1788) (suit to set aside a conveyance of land in trust by husband to his wife may be adjudicated in court of equity); 1 Garrard Glenn, Fraudulent Conveyances and Preferences Sec. 98 (rev. ed. 1940); 3 John N. Pomeroy, Pomeroy's Equity Jurisprudence Sec. 968 (Spencer W. Symons, ed., 5th ed. 1941). Thus, unlike Granfinanciera, this cause of action's historical antecedents provide little guidance.
 
 
 15
 Second, unlike land, the dollars in Granfinanciera were fungible, so recovery of a damages judgment for the amount of money fraudulently conveyed was viewed as equivalent to an avoidance of the conveyance. See id. at 48-49, 109 S.Ct. at 2793-2794. Further, because there was no petition for "an accounting or other specifically equitable form of relief, a complete remedy [was] available at law, and equity will not countenance an action when complete relief may be obtained at law." Id. at 49 n. 7, 109 S.Ct. at 2794 n. 7; see also McCoy, 507 F.2d at 306 (when remedy at law inadequate, suit can sound in equity and no jury trial is required). In this case, however, the appellees have sought a plethora of equitable remedies in addition to a request for an avoidance and money damages, including an accounting, an injunction, an equitable lien or constructive trust, and equitable subordination of the Pasquariellos' interest in the properties. Due to the mixed bag of remedies sought, it is not clear that the district court erred in concluding that complete relief is not available at law.
 
 
 16
 And even if we were to determine that appellant had clearly demonstrated that Granfinanciera rejected the consensus of the courts of appeals regarding the historical and remedial nature of an action to avoid a fraudulent conveyance of real property, she would still need to show that Congress could not assign the claim to a non-Article III adjudicative body that does not use a jury as factfinder. Instead we find that Congress's plan regarding granting a right to a jury trial in such core proceedings is unclear.
 
 
 17
 There is sparse legislative history with respect to the final version of the 1984 Amendments. We note that the only reference to jury trials by Representative Robert Kastenmeier, a ranking majority member of the conference committee which considered the bill, was the statement that "[f]inally, the conference report states that in this narrow range of cases [covered by 28 U.S.C. Sec. 1411 (1988) which permits jury trials in cases of a "personal injury or wrongful death tort claim,"] the parties do not lose any right to a jury trial that they may have had if the claim had been cognizable outside the bankruptcy context." 130 Cong.Rec. 20,228 (June 29, 1984), reprinted in 1984 U.S.C.C.A.N. 579, 580. We note that those claims have always been viewed as non-core proceedings to which the Seventh Amendment applies. On the other hand, in the 1984 Amendments to the Bankruptcy Code Congress, after authorizing bankruptcy judges to hear and determine all "core proceedings arising under title 11," specifically decreed that "proceedings to determine, avoid, or recover fraudulent conveyances" are core proceedings. 28 U.S.C. Sec. 157(b)(1), (b)(2)(H) (1988).
 
 
 18
 While we do not suggest that Congress could deny a Seventh Amendment jury right simply by designating a proceeding as core, we believe that a congressional determination that no such right should exist for core proceedings may demonstrate the "careful consideration to the constitutionality of a legislative provision" to which "we owe some deference." Granfinanciera, 492 U.S. at 61, 109 S.Ct. at 2800. This ambiguity provides another reason why the right is unclear for purposes of the writ of mandamus.
 
 
 19
 In order to grant the writ, we would be required to resolve all these ambiguities in favor of the appellant. And regardless of the ultimate merits of appellant's position, a clear and indisputable right this is not. Without intimating any opinion as to the proper outcome on a direct appeal of Elizabeth's claim that she is entitled to a jury trial, we believe that a writ of mandamus is an inappropriate means to review the district court's decision.
 
 IV.
 CONCLUSION
 
 20
 For the foregoing reasons, we will dismiss the appellant's appeal and will deny her petition for a writ of mandamus.
 
 
 
 [1]
 Section 544(b) of the Bankruptcy Code provides:
 The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.
 
 
 [2]
 Section 548(a) of the Bankruptcy Code provides:
 The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily--
 (1) made such a transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
 (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
 (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
 (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or
 (iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.
 
 
 [3]
 FIRREA authorizes the RTC to
 avoid a transfer of any interest of an institution-affiliated party, or any person who the Corporation ... determines is a debtor of the institution, in property, or any obligation incurred by such party or person, that was made within 5 years of the date on which the Corporation ... was appointed conservator or receiver [of the insured depository institution] if such party or person voluntarily or involuntarily made such transfer or incurred such liability with the intent to hinder, delay, or defraud the insured depository institution, the Corporation or other conservator, or any other appropriate Federal banking agency.
 
 
 [4]
 Section 25:2-3 of the New Jersey Fraudulent Conveyances Act provides:
 Every conveyance, grant, or alienation or real estate, or goods and chattels, or of any estate or interest therein, whether made by writing or otherwise, and every judgment and execution which have been or shall be contrived in fraud, covin or collusion, with intent to hinder, delay or defraud creditors and others of their lawful actions, debts, damages or demands, shall be deemed and taken ... to be utterly void and of no effect, any feigned consideration, color or other pretense to the contrary notwithstanding.
 
 
 [5]
 Section 25:2-29(a) of the New Jersey Uniform Fraudulent Transfer Act provides:
 In an action for relief against a transfer or obligation under this article, a creditor ... may obtain:
 (1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;
 (2) An attachment or other provisional remedy against the asset transferred or other property of the transferee ...;
 (3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure,
 (a) An injunction against further disposition by the debtor or transferee, or both, of the asset transferred or of other property;
 (b) Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or
 (c) Any other relief the circumstances may require.
 
 
 [6]
 Since John did not make a demand for a jury trial, we confine our consideration to plaintiffs' claims as to Elizabeth
 
 
 [7]
 The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved."
 
 
 [8]
 Claimants who bring themselves within the equitable jurisdiction of the bankruptcy court by submitting claims against the estate are not entitled to a jury trial on a fraudulent conveyance action. See Langenkamp v. Culp, 498 U.S. 42, 44-45, 111 S.Ct. 330, 331-332, 112 L.Ed.2d 343 (1990) (per curiam). Elizabeth has filed no claim against the estate
 
 
 [9]
 We note that since the Court's holding in Granfinanciera, bankruptcy and district courts have found that the Seventh Amendment requires a jury trial in suits to set aside fraudulent transfers of real property. See, e.g., In re Stoecker, 117 B.R. 342 (N.D.Ill.1990); In re Lee Way Holding Co., 115 B.R. 586 (S.D.Ohio 1990), rev'd on other grounds, 956 F.2d 1164 (6th Cir.1992); In re Southeast Connectors, Inc., 113 B.R. 85 (S.D.Fla.1990); Michaels v. Lomax (In re Skil-Aire Corp.), 142 B.R. 692 (Bankr.D.N.J.1992); Beeline Engineering & Constr. Inc. v. Monek, 139 B.R. 1025 (Bankr.S.D.Fla.1992); In re Roberts, 126 B.R. 678 (Bankr.W.D.Pa.1991)