

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-4-1994

# Allegheny Int'l Inc. v. Allegheny Ludlum Steel Corp.

Precedential or Non-Precedential:

Docket 943-3177

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Allegheny Int'l Inc. v. Allegheny Ludlum Steel Corp." (1994). *1994 Decisions.* Paper 178.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/178

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94-3177


ALLEGHENY INTERNATIONAL, INC.

v.

ALLEGHENY LUDLUM STEEL CORPORATION

ALLEGHENY LUDLUM CORPORATION
(formerly known as Allegheny

Ludlum Steel Corporation)

Appellant


On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 91-01959)


Argued September 21, 1994

BEFORE:  GREENBERG and ROTH, Circuit Judges,
and FULLAM, District Judge*

(Filed:  November 4, 1994)


Dennis J. Lewis (argued)
Laura A. Meaden
Cohen & Grigsby
625 Liberty Avenue
2900 CNG Tower
Pittsburgh, Pa. 15222

Attorneys for Appellee

* Honorable John P. Fullam, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

Jeffrey G. Brooks
Kevin P. Lucas (argued)
Manion, McDonough & Lucas
600 Grant Street
Suite 882
Pittsburgh, Pa. 15219

Robert L. Byer
Kirkpatrick & Lockhart
1500 Oliver Building
Pittsburgh, Pa. 15222

<u>Attorneys for Appellant</u>

OPINION OF THE COURT

GREENBERG, <u>Circuit</u> <u>Judge</u>.


I. FACTUAL AND PROCEDURAL HISTORY

A. <u>Factual History</u>

Allegheny Ludlum Corporation (Allegheny Ludlum), a company engaged in the business of designing, manufacturing and selling specialty steel products, appeals from an order for summary judgment entered against it in the district court. The appellee is Allegheny International, Inc. (Allegheny International), a Pennsylvania corporation formerly named Allegheny Ludlum Industries, Inc. Until mid-1979, Allegheny Ludlum was an operating division of Allegheny International but between mid-1979 and late 1980 was its wholly-owned subsidiary. At that time, Allegheny Ludlum was known as the Allegheny Ludlum Steel Corporation (Allegheny Ludlum Steel).

In late 1980, Allegheny International sold all of the outstanding common stock in Allegheny Ludlum Steel to the LSC Corporation, an entity formed by a group of Allegheny Ludlum Steel's senior managers. Following the sale, LSC Corporation was merged into Allegheny Ludlum Steel, which then became known as Allegheny Ludlum Corporation (Allegheny Ludlum). This action arises out of several agreements related to Allegheny International's sale of Allegheny Ludlum Steel.

To effectuate the sale of Allegheny Ludlum Steel, Allegheny International and LSC entered into a stock purchase agreement on November 26, 1980 (the 1980 stock purchase agreement).[1] See app. at 26-84. Pursuant to the agreement, on December 26, 1980, Allegheny International sold all of Allegheny Ludlum Steel's common stock to LSC. At the same time, Allegheny International acquired all of Allegheny Ludlum Steel's $9.00 Participating Preferred Stock. This controversy centers on two provisions of this agreement: (1) paragraph 12(d) and (e) regarding the disposition of any post-closing tax benefits or detriments to Allegheny Ludlum for pre-closing tax periods; and (2) paragraph 5(e) regarding certain post-closing insurance to be maintained by Allegheny International on behalf of Allegheny Ludlum.

---

[1]. As we have set forth above, Allegheny International formerly was named Allegheny Ludlum Industries, Inc. Thus, the seller in the stock sale agreement is Allegheny Ludlum Industries, Inc. The purchaser is ALSCO Corporation rather than LSC Corporation, but it appears that the stock was conveyed to LSC Corporation which we thus will treat as the purchaser.

Paragraph 12(d) provides that LSC, now known as

Allegheny Ludlum, would reimburse Allegheny International

> to the extent of any tax benefit received by [LSC] in taxable periods subsequent to the Closing Time as a result of the adjustment in the taxable income or other tax attributes of [Allegheny Ludlum Steel] or [Oklahoma Tubular Products Company] or as a result of over payment of taxes for periods through and including the Closing Time.  The reimbursement required by this section shall be made at the time any such tax benefit is determined by the filing of a tax return, amended tax return or otherwise.

See app. at 77.[2]  Paragraph 12(e) provides that Allegheny

International will reimburse LSC for any tax detriment suffered

by LSC after the sale "as a result of any adjustments in the

taxable income or other tax attributes of [Allegheny Ludlum

Steel] or [Oklahoma Tubular Products Company] for periods through

and including the Closing Time."  Id. at 77-78.  Paragraph 5(e)

provides that Allegheny International

> will keep the insurance set forth in Exhibit H in full force and effect [until the closing time] and thereafter for a reasonable time at [LSC's] request provided that [LSC] shall pay its allocable portion of the premiums and any claims thereunder shall be subject to any deductible of [Allegheny International] (and if a deductible applies to such loss as well as to some other loss sustained by [Allegheny International], to an allocable portion of such deductible).

---

[2].  The parties do not discuss how Oklahoma Tubular Products Company is related to Allegheny International and Allegheny Ludlum in their briefs, and we thus conclude that the relationship is not germane to this case.

See app. at 50.  Allegheny International had maintained property and casualty insurance on behalf of Allegheny Ludlum Steel at least since 1976.  Starting in 1976, these policies were written by Liberty Mutual Insurance Company, which charged Allegheny International for the cost of claims paid, an administrative cost adjustment, and a tax adjustment.

Following its acquisition by LSC, Allegheny Ludlum acquired certain insurance coverage in its own name which became effective July 1, 1981.  In a letter agreement dated August 10, 1981 (the 1981 insurance agreement), Allegheny International and Allegheny Ludlum recognized that Allegheny Ludlum had "established its own separate property and casualty insurance program," but agreed that Allegheny International would continue to provide Allegheny Ludlum with certain specified policies and management services until December 31, 1981.  Id. at 86.  The 1981 insurance agreement also provided that Allegheny Ludlum would be

> solely responsible for any insurance costs generated by or on behalf of [Allegheny Ludlum] under all previous programs established by [Allegheny International] for [Allegheny Ludlum].  Such costs would include but not be limited to audits, retrospective adjustments requiring additional premium payment, deductible payments or absorptions, renewals at the direction of [Allegheny Ludlum], etc.

Id.

In a letter dated April 13, 1983, Allegheny International informed Allegheny Ludlum that it had a net operating loss during its 1982 tax year, and that as a result, it

had filed "carryback claims" for 1979 and 1980, years in which it had deducted the 1982 loss from its taxable income. Id. at 750. Originally, Allegheny International had offset a certain portion of its taxable income in 1979 and 1980 with investment tax credits generated by Allegheny Ludlum Steel's acquisition of equipment. However, because Allegheny International's subsequent net operating losses eliminated its taxable income for the tax years 1979 and 1980, it no longer needed the investment tax credits. It thus informed Allegheny Ludlum that the investment tax credits in those years should be used by Allegheny Ludlum to reduce its taxable income in 1981. Id. The investment tax credits were not available directly to Allegheny International, because they had been generated exclusively by Allegheny Ludlum Steel (Allegheny Ludlum's predecessor) when it was a wholly owned subsidiary of Allegheny International. Id. at 750 (letter from Allegheny International to Allegheny Ludlum); id. at 1312 (Allegheny Ludlum's amended income tax return for 1981 tax year).

Thus, in its April 1983 letter to Allegheny Ludlum, Allegheny International requested that Allegheny Ludlum use the newly available investment tax credits (previously used by Allegheny International for tax years 1979 and 1980) to file a claim for a refund for the 1981 tax year. Id. at 750. Allegheny International also requested that pursuant to paragraph 12(d) of the 1980 stock purchase agreement, Allegheny Ludlum reimburse it

for the value of the investment tax credits and any interest received.  Id.[3]

Allegheny Ludlum promptly filed these claims.  Id. at 1311.  Moreover, in a letter dated April 22, 1983, Allegheny Ludlum responded to Allegheny International's April 13th letter, and stated that "[Allegheny Ludlum] will pay any reimbursement due to Allegheny International, Inc. (AI) resulting from the carryover of [the] 1979 and 1980 investment and foreign tax credits to 1981 as soon as possible after [Allegheny Ludlum] receives its refund check from the Internal Revenue Service." Id. at 752.

It was not until March 1989, three years after the execution of the 1986 agreement we discuss below, that the Internal Revenue Service (IRS) finally approved Allegheny International's reduction of its taxable income in 1979 and 1980 by the use of later net operating losses.  Accordingly, only then did the IRS notify Allegheny Ludlum that its refund claim would be allowed.  Id. at 1035.  In July 1989, the IRS sent Allegheny Ludlum a check in the amount of $5,490,363.86, reflecting the amount of the tax refund ($2,233,059.75) plus interest at the statutory rate under the Internal Revenue Code to the date of the payment of the refund.  Id. at 1636 (pretrial stipulations), id. at 801 (check).[4]  The IRS sent Allegheny Ludlum a second check in

---

[3].  The letter cites Section 12(e) but we believe that Allegheny International meant section 12(d).

[4].  Allegheny International's brief states that the IRS sent Allegheny Ludlum checks in the amount of $5,787,665.38, reflecting the amount of the tax refund ($2,479,317) plus

December 1989 for $307,301.52, which included the balance of the refund, $246,257.25, plus additional interest.  Id. at 1636 (pretrial stipulations), id. at 802 (check).  Thus, Allegheny Ludlum received a total refund with interest of $5,797,665.38.[5]

Before Allegheny Ludlum obtained the refund, Allegheny International had filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Pennsylvania on February 20, 1988.  On May 27, 1988, Allegheny Ludlum filed a claim against Allegheny International for reimbursement of certain tax costs pursuant to paragraph 12(e) of the 1980 stock purchase agreement.  Allegheny Ludlum and Allegheny International settled this claim with a stipulation dated February 27, 1989, which was approved by the bankruptcy court.  The stipulation fixed the value of Allegheny Ludlum's claim against Allegheny International and provided that it was subject to a setoff of any amounts owed by Allegheny Ludlum to Allegheny International pursuant to the 1980 stock purchase agreement.  See id. at 1674–76.

On August 9, 1989, Allegheny Ludlum informed Allegheny International that, based on its construction of a February 18, 1986 settlement agreement resolving numerous disputes between the parties, including a dispute over insurance matters, it intended

(..continued)
interest at the statutory rate under the Internal Revenue Code to the date of the payment of the refund.  See br. at 8.

[5].  Allegheny International's brief states that the total of $5,797,665.38 included $362.93 for an unrelated item.  See br. at 12.

to retain the refund the IRS sent it in July 1989.  Id. at 804.
In particular, in 1985 Allegheny International had filed suit
against Allegheny Ludlum in a Pennsylvania state court, the Court
of Common Pleas of Allegheny County, to recover insurance costs
that it claimed Allegheny Ludlum owed it.  In the February 18,
1986 agreement, Allegheny International stated that it would
"withdraw and cause to be dismissed with prejudice as to all
parties all legal proceedings" it initiated against Allegheny
Ludlum, including this insurance matter.  See 1986 agreement, at
2 (Allegheny Ludlum br. Tab F).  The 1986 agreement provided in
return that Allegheny Ludlum would "purchase and redeem from
[Allegheny International] all of the 650,000 shares of issued and
outstanding shares of the $9.00 participating Preferred Stock . .
. of [Allegheny Ludlum] owned by [Allegheny International] for an
aggregate consideration of 37 million dollars."  Id. at 1.  This
redemption agreement had the advantage of effectuating a clean
break between the corporations including the termination of
Allegheny International's representation on the Allegheny Ludlum
board of directors.

        Finally, the 1986 agreement stated that Allegheny
International would release Allegheny Ludlum from certain claims.
Pursuant to the agreement, on February 28, 1986, Allegheny
International delivered a release to Allegheny Ludlum.  The first
clause of this document contains broad language seemingly
releasing Ludlum from any and all claims arising before February
19, 1986.  The second clause, however, qualifies the first by

excepting certain obligations under the November 26, 1980 agreement.

The language of this release is virtually identical to the language which the 1986 agreement prescribed for the release. See app. at 109-10. While the release refers to the agreement having been dated February 19, 1986, rather than February 18, 1986, that one-day difference is not significant, as it simply reflects the fact that Allegheny International's acceptance of the agreement was dated February 19, 1986.[6] The resolution of this action turns in large part on the construction of this release.

## B. Procedural History

Allegheny International initiated this action for breach of contract and unjust enrichment against Allegheny Ludlum on November 28, 1989. However, pursuant to reorganization proceedings in the bankruptcy court, Sunbeam-Oster Company, Inc. has acquired Allegheny International's assets and thus it is prosecuting this action for Allegheny International, which nevertheless remains the named plaintiff. Notwithstanding Sunbeam-Oster's asset acquisition, it appears that Allegheny International's corporate existence has not been terminated, as the Pennsylvania Department of State certified on July 12, 1993, that it is an existing Pennsylvania corporation.

---

[6]. Sections 12(a)(ii) and (iii) relate to inspection of records and certain post-closing undertakings not germane to this litigation.

Relying on the 1980 stock purchase agreement, Allegheny International seeks to recover the value of the refund received by Allegheny Ludlum and certain insurance costs incurred by Allegheny International after March 1, 1986. Allegheny International began the case as an adversary proceeding in the bankruptcy reorganization of In re: Allegheny Int'l, Inc., et al., Case No. 88-00448 (Bankr. W.D. Pa.). After Allegheny International filed its complaint, Allegheny Ludlum filed an answer, demanded a jury trial, made a motion for judgment on the pleadings based on the 1986 settlement agreement, and made a motion to transfer Allegheny International's action to the district court. See Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp., 920 F.2d 1127, 1130 (3d Cir. 1990). The bankruptcy court denied Allegheny Ludlum's motion to transfer the case to district court. Id. at 1128-30. The district court then dismissed Allegheny Ludlum's appeal from that decision. Id. at 1131. The district court also denied Allegheny Ludlum's motion for withdrawal of reference of the adversary action. Id. On further appeal, we dismissed for lack of jurisdiction Allegheny Ludlum's appeals from: (1) the district court's dismissal of Allegheny Ludlum's appeal of the bankruptcy court's refusal to transfer the case; and (2) the district court's denial of Allegheny Ludlum's motion for withdrawal of reference of the adversary proceeding. Id. at 1129.

One year later, in November 1991, before the bankruptcy court ruled on Allegheny's motion for judgment on the pleadings, the district court withdrew the reference to the bankruptcy

court, and referred the case to a magistrate judge for pretrial proceedings. In its motion for judgment on the pleadings, Allegheny Ludlum asserted that the 1986 settlement agreement and the resulting release executed by Allegheny International barred Allegheny International's claims against Allegheny Ludlum for the tax refund and for insurance costs. See app. at 1379-83 (motion for judgment on the pleadings). In addition, Allegheny Ludlum maintained that Allegheny International's claim for insurance costs was "barred by reason of principles of res judicata/collateral estoppel" because, pursuant to the 1986 agreement between the parties, the state court entered an order dismissing with prejudice Allegheny International's 1985 insurance costs claim. Id. at 1383-84. Allegheny Ludlum argued that the claim for insurance costs was precluded, because in the 1985 action which the state court dismissed with prejudice, Allegheny International had sought a declaratory judgment holding Allegheny Ludlum liable for future insurance claims.

On April 28, 1992, the magistrate judge recommended that the district court deny Allegheny Ludlum's motion for judgment on the pleadings and allow the case to proceed to discovery. See report (Allegheny Ludlum br. Tab C). Though Allegheny Ludlum filed objections to the report, on May 13, 1992, the district court issued a memorandum order denying Allegheny Ludlum's motion and adopting the magistrate's report as its opinion. See May 13, 1992 district court order (Allegheny Ludlum br. Tab D). The magistrate judge's report concludes that Allegheny Ludlum was not entitled to judgment on the pleadings

based on the release because: (1) the release does not cover "claim[s] based on Allegheny Ludlum's failure to perform in the future under any earlier contract"; (2) "[i]n applying this language [in the release], the court or a trier of fact, must determine when plaintiff's claims accrued"; and (3) this question could not be resolved "solely on the basis of the pleadings." See report, at 7 (Allegheny Ludlum br. Tab C). The report also concluded that the dismissal with prejudice of Allegheny International's 1985 state court suit for insurance costs did not entitle Allegheny Ludlum to judgment on the pleadings with regard to Allegheny International's insurance costs claim. The magistrate judge relied on Allegheny International's contention that it was seeking reimbursement only for insurance costs it incurred on Allegheny Ludlum's behalf "in and after 1989" which "thus were not part of that state law action." Id. at 10.[7] According to the magistrate judge's report, this allegation raised a question of material fact which precluded the court from granting Allegheny Ludlum's motion for judgment on the pleadings. Id.

Allegheny Ludlum then expanded its defense to Allegheny International's complaint, as it filed a motion for summary judgment with supporting affidavits on June 14, 1993, alleging that it was entitled to summary judgment based on the 1986 agreement, the resulting release executed by Allegheny

---

[7]. The 1989 date is incorrect as Allegheny International is seeking reimbursement for costs since 1986.

International, and the state court's entry of an order dismissing with prejudice Allegheny International's 1985 insurance costs claim. See app. at 131-43. On June 28, 1993, Allegheny Ludlum filed a second, separate "Motion for Summary Judgment Challenging Sunbeam-Oster Company, Inc.'s Right to Prosecute This Action," asserting that Sunbeam-Oster Company, Inc., which alleged that it was Allegheny International's successor in interest, had not established that it was the legal owner of the claims asserted against Allegheny Ludlum. Id. at 427-30. Also on June 28, 1993, Allegheny International filed a motion for summary judgment with supporting affidavits and other documents. Id. at 238-40.

On April 7, 1994, the district court issued a judgment order and memorandum opinion denying both of Allegheny Ludlum's motions for summary judgment, granting Allegheny International's motion for summary judgment, and awarding Allegheny International the damages it requested plus prejudgment interest and declaratory relief with respect to future tax benefits received by Allegheny Ludlum and insurance costs Allegheny Ludlum incurred on its behalf. See Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp., No. 91-1959, slip op. (W.D. Pa. April 7, 1994) [hereinafter Allegheny Int'l, Inc., slip op.].[8] The district court based its decision on the law of the case because it viewed its earlier decision denying Allegheny Ludlum's motion for judgment on the pleadings as already resolving the meaning of the

_____

[8]. The district court also denied Allegheny Ludlum's motion for sanctions and Allegheny International's motion for leave to file an amended pretrial statement.

release language and the res judicata effect of Allegheny International's 1985 state court suit for insurance costs. Accordingly, the district court would not revisit these issues absent "extraordinary circumstances." See Allegheny Int'l, Inc., slip op. at 16.

In its earlier decision, the district court had concluded as a matter of law that the language of the release was unambiguous and that it excluded claims based on Allegheny Ludlum's "failure to perform . . . after February 1986, under any earlier contract." Id. at 14. The district court adhered to its earlier construction of the release "as the law of the case" because: (1) it already had interpreted it as a matter of law; and (2) Allegheny Ludlum did not allege that the 1986 agreement and the release were ambiguous, "but rather that [the magistrate judge], and this Court, misunderstood the clear and unambiguous import of these instruments." Id. at 20.

The district court concluded that although it had not expressly decided the res judicata effect of the dismissal of the 1985 state court suit, it had done so "by necessary implication." Id. at 15. The district court reasoned that "[t]he materiality of the disputed factual issue . . . precluding the granting of defendant's motion for judgment on the pleadings [was] necessarily grounded [on the] legal conclusion that res judicata will not bar an insurance claim based on insurance payments not forming part of the dismissed state court action." Id. at 15 (citations omitted). The district court adhered to this earlier

decision because it concluded that the decision was not "clearly erroneous." Id. at 24.

Thus, the district court concluded that based on its earlier decision, Allegheny International's claims were not barred. Then, applying the legal conclusions it had reached in its earlier decision, the district court held that because Allegheny International's tax claim accrued after February 1986 and its insurance costs were incurred after March 1, 1986, Allegheny International was entitled to recover the tax benefits and insurance costs it claimed under the 1980 stock purchase agreement and the 1981 insurance agreement, respectively. Id. at 28–29.

Accordingly, the district court entered judgment in favor of Allegheny International in the amount of $7,476,499.97 with respect to its tax refund claim and $508,073.70 with respect to its insurance cost claim. See April 7, 1994 district court order (Allegheny Ludlum Br. Tab A). The former amount was the sum of five figures: (1) $5,490,363.86 (the IRS check dated 7/20/89); (2) $1,317,687.20 (interest on that amount from 8/1/89 to 7/31/93); (3) $307,301.52 (the IRS check dated 12/11/89 minus $362.93 for an unrelated amount paid to Allegheny Ludlum by the IRS); (4) $66,022.39 (interest on this sum from 1/1/90 to 7/31/93); and (5) $295,125 (interest from 8/1/93 to 4/7/94). The latter amount was the sum of $500,505 in insurance costs incurred by Allegheny International on behalf of Allegheny Ludlum and $7,568.70 in administrative fees and taxes incurred by Allegheny International on behalf of Allegheny Ludlum. Id. The district

court also ordered that: (1) future tax benefits received by Allegheny Ludlum "which relate to tax periods prior to [its sale] are to be refunded to [Allegheny International] pursuant to the terms of the November 26, 1980 Stock Purchase Agreement"; and (2) "all future insurance costs incurred by [Allegheny International] which are attributable to [Allegheny Ludlum's] operations and which relate to incidents, claims or facts arising or occurring between 1976 and July 1, 1981, are to be paid by [Allegheny Ludlum] under the terms of the August 10, 1981 Insurance Agreement." Id.

The district court denied Allegheny Ludlum's motion for summary judgment challenging Sunbeam-Oster Company, Inc.'s right to prosecute the case because the court concluded that "by bringing [the motion] as late in the litigation as it [did,] [Allegheny Ludlum] waived any such defense." Allegheny Int'l, Inc., slip op. at 31 (citing 6A Charles A. Wright, et al., Federal Practice and Procedure § 1554, at 406-07 (1990)). Finally, the district court denied Allegheny Ludlum's motion for the imposition of sanctions on Allegheny International due to its alleged failure to allow meaningful discovery, noting "[i]n particular" that Allegheny Ludlum "failed to establish any prejudice in its defense against the insurance cost claim as a result of [Allegheny International's] alleged discovery shortcomings." Id. at 34-35. Allegheny Ludlum then appealed. The district court had jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(d), and we have jurisdiction under 28 U.S.C. § 1291.

II. DISCUSSION

A.  The Release

Allegheny International claims that the 1980 stock purchase agreement entitled it to reimbursement for the tax refund received by Allegheny Ludlum in 1989, and that both the 1980 stock purchase agreement and the 1981 insurance agreement entitled it to reimbursement for the insurance costs it has incurred on Allegheny Ludlum's behalf since March 1, 1986. Allegheny Ludlum bases one of its defenses to these claims on the release executed by Allegheny International in February 1986 pursuant to the 1986 stock redemption agreement.  According to Allegheny Ludlum, the release "includes all claims for Allegheny Ludlum's breach of any contractual obligation that was to be performed after February 19, 1986."  See Allegheny Ludlum br. at 24.  Allegheny Ludlum argues that it was not obligated to reimburse Allegheny International for the tax refund until the IRS made the refund in 1989 and that it was not obligated to reimburse Allegheny International for insurance costs incurred after March 1, 1986, as that date is after February 19, 1986. Id. at 24-25.  Thus, it is Allegheny Ludlum's position that the release bars both Allegheny International's tax refund claim and its insurance costs claim.

We exercise plenary review over the district court's grant of summary judgment.  See Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., 998 F.2d 1224, 1230 (3d Cir.), cert.

denied, 114 S.Ct. 554 (1993). Therefore, we must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [Allegheny International] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> 'The moving party has the initial burden of identifying the evidence that demonstrates the absence of a genuine issue of material fact, [but] the respondent (the "non-movant") must establish the existence of each element on which it bears the burden of proof.'

FDIC v. Bathgate, 27 F.3d 850, 860 (3d Cir. 1994) (quoting J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1531 (3d Cir. 1990), cert. denied, 499 U.S. 921, 111 S.Ct. 1313 (1991)). "[I]n applying this standard, 'all inferences must be drawn against the movant, . . . and in favor of the nonmovant.'" Id. at 860 (quoting Erie Telecommunications, Inc. v. City of Erie, 853 F.2d 1084, 1093 (3d Cir. 1988)). However, "'where the movant has produced evidence in support of its motion for summary judgment, the nonmovant cannot rest on the allegations of pleadings and must do more than create some metaphysical doubt.'" Id. (quoting Petruzzi's IGA, 998 F.2d at 1230).

The 1980 stock purchase agreement states that it "shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania." See app. at 83. Although the 1981 insurance agreement, the 1986 agreement, and the release do not identify the governing law, the parties have briefed the case

under Pennsylvania law, which we thus apply.  See Langer v. Monarch Life Ins. Co., 879 F.2d 75, 80 (3d Cir. 1989).[9]

"Under Pennsylvania law, ambiguous writings are interpreted by the fact finder and unambiguous writings are interpreted by the court as a question of law."  Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1011 n.10 (3d Cir. 1980) (applying Pennsylvania law) (citing Broker Title Co. v. St. Paul Fire and Marine Ins. Co., 610 F.2d 1174 (3d Cir. 1979)).  Thus, the first question "[c]ourts are left with [is] the difficult issue of determining as a matter of law which category written contract terms fall into – clear or ambiguous."  Id. at 1011 (citing United Refining Co. v. Jenkins, 189 A.2d 574, 580 (Pa. 1963); O'Farrell v. Steel City Piping Co., 403 A.2d 1319 (Pa. Super. Ct. 1979)).  If the court determines that a contract is clear, or unambiguous, then it construes the contract as a matter of law.  Id. at 1011 n.10.  See also Kroblin Refrigerated Xpress, Inc. v. Pitterich, 805 F.2d 96, 101 (3d Cir. 1986) ("It is well settled that unambiguous writings are construed as a matter of law.") (applying Pennsylvania law) (citing Ram Construction Co. v. American States Ins. Co., 749 F.2d 1049, 1052 (3d Cir. 1984); Mellon, 619 F.2d at 1011 n.10).  Therefore, because the district court determined that the release was

---

[9].  It is difficult to understand how any other law could apply, as Allegheny International, Allegheny Ludlum, and the ALSCO Corporation, which was the purchaser named in the November 26, 1980 agreement, are Pennsylvania corporations and the transactions involved in this case all took place in Pennsylvania.  See n.1, infra.

unambiguous, the court construed it as a matter of law.  See
Allegheny Int'l, Inc., slip op. at 13-14, n.9, & 20.  See also
USX Corp. v. Prime Leasing Inc., 988 F.2d 433, 436-37 (3d Cir.
1993).  We exercise plenary review over these legal
determinations.

"A contract is ambiguous if it is reasonably
susceptible of different constructions and capable of being
understood in more than one sense."  Hutchison v. Sunbeam Coal
Corp., 519 A.2d 385, 390 (Pa. 1986) (citations omitted).  See
also Hullett v. Towers, Perrin, Forster & Crosby, Inc., No. 94-
1517, slip op. at 6 (3d Cir. Oct. 28, 1994); Langer, 879 F.2d at
80 (quoting Hutchison's definition of ambiguity).  The Supreme
Court of Pennsylvania has identified two types of ambiguity: (1)
patent ambiguity, and (2) latent ambiguity, and has defined them
as follows:

> '[a] patent ambiguity is that which appears
> on the face of the instrument, and arises
> from the defective, obscure, or insensible
> language used.'  Black's Law Dictionary 105
> (rev. 4th ed. 1968).  In contrast, a latent
> ambiguity arises from extraneous or
> collateral facts which make the meaning of a
> written agreement uncertain although the
> language thereof, on its face, appears clear
> and unambiguous.  Easton v. Washington County
> Ins. Co., 391 Pa. 28, 137 A.2d 332 (1957).

Steuart v. McChesney, 444 A.2d 659, 663 (Pa. 1982).

Thus, we will begin by examining the language of the
release to determine whether it contains a patent ambiguity.  The
release states the following:

> [Allegheny International] hereby releases
> [Allegheny Ludlum] from any and all claims
> and causes of action (including the

litigation referred to in Section 3(b) of the aforesaid letter agreement dated as of February 19, 1986) attributable to events or agreements occurring prior to February 19, 1986, whether or not arising out of the agreement dated November 26, 1980, pursuant to which [Allegheny Ludlum] was purchased from [Allegheny International,] provided; however, that the release shall not release any claim or cause of action based on the failure of [Allegheny Ludlum] [or] LSC Corporation ("LSC") . . . to perform any obligation which [Allegheny Ludlum] [or] LSC . . . has to [Allegheny International] under said agreement dated November 26, 1980 (other than obligations under Sections 12(a)(ii) and (iii) thereof) or under any other written obligation to [Allegheny International] which was to have been performed by [Allegheny Ludlum] [or] LSC . . . at or prior to February 19, 1986.

See release, at 1-2 (Allegheny Ludlum br. Tab G).

As the district court recognized, the release consists of two clauses.  The first clause contains broad language releasing Allegheny Ludlum from:

any and all claims and causes of action [including Allegheny International's 1985 insurance cost suit] attributable to events or agreements occurring prior to February 19, 1986, whether or not arising out of the [1980 stock purchase agreement], pursuant to which [Allegheny Ludlum] was purchased from [Allegheny International].

See Allegheny Ludlum br. Tab G, at 1.  This language in itself is unambiguous and, if it stood alone, we would conclude it covers both Allegheny International's tax refund claim and its insurance

cost claim, as these claims arise from "agreements occurring prior to February 19, 1986."[10]

However, the second clause of the release contains "language which limits the apparent carte blanche release" contained in the first clause.  See magistrate judge's report at 7 (Allegheny Ludlum's br. Tab C).  The second clause provides that

> the release shall not release any claim or
> cause of action based on the failure of
> [Allegheny Ludlum] to perform any obligation
> which [Allegheny Ludlum] has to [Allegheny
> International] under said agreement dated
> November 26, 1980 (other than obligations
> under Sections 12(a)(ii) and (iii) thereof)
> or under any other written obligation to
> [Allegheny International] which was to have
> been performed by [Allegheny Ludlum] at or
> prior to February 19, 1986.

See release, at 1-2 (Allegheny Ludlum br. Tab G).  As we noted above, the district court held that this clause excluded from the

---

10.  It is undisputed that Allegheny International's claims are based on the 1980 stock purchase agreement and the 1981 insurance agreement.  Allegheny International argues that the first clause of the release does not bar its claims because it contains "no clear and unequivocal expression of an intent" to release claims based on a failure to perform in the future obligations which arise out of agreements reached prior to February 19, 1986.  See Allegheny International br. at 22.  We disagree.  As Allegheny Ludlum points out, the first clause of the release "clearly demonstrates the parties' intention that plaintiff released Allegheny Ludlum from 'any and all claims and causes of action,' regardless when they arose or when performance [was] due, so long as those claims 'were attributable to events or agreements occurring prior to February 19, 1986.'"  See Allegheny Ludlum reply br. at 4.  Our conclusion is consistent with the magistrate judge's report, which the district court adopted, which stated that if the first clause "were the full extent of the release [Allegheny Ludlum's] claims would be well-founded."  See report, at 7 (Allegheny Ludlum br. Tab C).

release claims based on Allegheny Ludlum's "failure to perform .
. . after February 1986, under any earlier contract."  See
Allegheny Int'l, Inc., slip op. at 14 (emphasis added);
magistrate judge's report, at 7 (Allegheny Ludlum br. Tab C)
("Specifically, the release excludes from coverage any claim
based on Allegheny Ludlum's failure to perform in the future
under any earlier contract.").

The district court's construction of the second clause
in the release is inconsistent with the constructions advanced by
both Allegheny International and Allegheny Ludlum.  See Allegheny
Ludlum reply br. at 8.  Moreover, the district court's
construction of the second clause is inconsistent with language
in the clause, namely the phrase: "which was to have been
performed by [Allegheny Ludlum] at or prior to February 19,
1986."  See release, at 1-2 (Allegheny Ludlum br. Tab G).
Allegheny International takes the position that this phrase
modifies only the phrase which immediately precedes it, namely,
"any other written obligation to [Allegheny International]," and
not obligations under the 1980 stock purchase agreement.  See
Allegheny International br. at 23, 26.  Thus, Allegheny
International maintains that the second clause exempts from the
release any claim based on Allegheny Ludlum's failure to perform
in the future (i.e. subsequent to the February 1986 execution of
the release) any obligation under the 1980 stock purchase
agreement, but does not adopt the district court's view that the
second clause exempts from the release any claim based on
Allegheny Ludlum's "failure to perform . . . after February 1986,

under any earlier contract."  See Allegheny Int'l, Inc., slip op. at 14 (emphasis added); magistrate judge's report, at 7 (Allegheny Ludlum br. Tab C).

In fact, Allegheny International indicates that the release bars claims based on Allegheny Ludlum's failure to perform after February 1986 under written obligations other than the 1980 stock purchase agreement, and that the second clause of the release only preserves claims arising out of such other written obligations if they accrued "prior to the date of the Release."  See Allegheny International br. at 23 ("The second part of the proviso relates to [Allegheny Ludlum's] obligations under agreements other than the [1980 stock purchase agreement]").  Nonetheless, Allegheny International argues that the district court reached the correct result because: (1) the second clause exempts from the release any claim based on Allegheny Ludlum's failure to perform in the future (i.e., subsequent to the February 1986 execution of the release) any obligation under the 1980 stock purchase agreement, id. at 22-24; and (2) thus its claims based on Allegheny Ludlum's failure to reimburse it for the 1989 tax refund and the insurance costs Allegheny International incurred after March 1, 1986, are not barred by the release.

Unlike Allegheny International, Allegheny Ludlum takes the position that the phrase "which was to have been performed by [Allegheny Ludlum] at or prior to February 19, 1986," modifies more than the phrase which immediately precedes it, namely, "any other written obligation."  See Allegheny Ludlum br. at 23-24.

According to Allegheny Ludlum, it modifies the phrase "any obligation which [Allegheny Ludlum] has to [Allegheny International]" under the 1980 stock purchase agreement and its obligations under "any other written obligation to [Allegheny International]." Id. Thus, Allegheny Ludlum argues that the second clause preserves only those claims based on obligations which were to be performed on or before February 19, 1986. Based on this reading of the second clause of the release, the release bars Allegheny International's claims based on Allegheny Ludlum's failure to reimburse it for the 1989 tax refund and the insurance costs Allegheny International incurred after March 1, 1986, because these claims are not based on obligations that Allegheny Ludlum was to have performed prior to February 19, 1986.[11]

We acknowledge that the use of the conjunction "or" to separate the phrase "under [the 1980 stock purchase agreement]" from the phrase "under any other written obligation" could be construed to indicate that the phrase "which was to have been performed by [Allegheny Ludlum] at or prior to February 19, 1986" modifies only the phrase "any other written obligation." However, as the Pennsylvania Supreme Court stated in Dilks v. Flohr Chevrolet, Inc., 192 A.2d 682, 685 (Pa. 1963),

---

[11]. As Allegheny Ludlum points out, "[i]t is undisputed that the time for Allegheny Ludlum's performance with respect to the tax refund claim was not until 1989 after it received the tax refund from the Internal Revenue Service," and that "the time for Allegheny Ludlum's performance of the insurance cost reimbursement in question did not arise until those costs were incurred at various times after March 1, 1986." See Allegheny Ludlum br. at 24-25 (citing app. at 1422, 284-85, 1492).

> [w]ords and phrases on one side of the word 'or' may, and often do, modify and apply to words and phrases on the other side of the word 'or' in the same sentence.

Moreover, in Hutchison, the court held that a paragraph in a lease was ambiguous, because it was susceptible to both the appellant's construction of the paragraph, which "rest[ed] wholly on the use of the word 'or' to connect the series [of words]," and the appellee's construction, which was "not totally consistent with the use of the word 'or,' but seem[ed] more natural."  Hutchison, 519 A.2d at 390.  In our view, it seems unnatural to construe the second clause of the release to preserve claims based on future obligations under one contract between the parties and claims based on past obligations under other contracts between the parties.  Thus, the mere use of the conjunction "or" does not render the clause unambiguous, and we conclude that the clause is susceptible to more than one meaning.

Allegheny International makes two other arguments to support its contention that the second clause of the release is unambiguous.  First, it argues that the language of the second clause of the release is not reasonably susceptible to Allegheny Ludlum's construction because "[t]o read the phrase 'to have been performed . . . at or prior to February 19, 1986' as referring to [the 1980 stock purchase agreement] turns the first clause of the proviso into mere surplusage" in violation of "standard rules of contract construction."  See Allegheny International br. at 26. We do not believe that this argument is determinative because

Allegheny International's construction of the second clause of the release also seems to turn a portion of the first clause into surplusage.

Allegheny International next argues that the second clause of the release is not reasonably susceptible to Allegheny Ludlum's construction because "[u]nder [Allegheny] Ludlum's construction, no contractual claims, including the insurance claims which were in litigation at the time the Release was executed, were released." Id. at 25. According to Allegheny International, such a construction of the second clause of the release "lead[s] to an absurdity" and thus should be rejected in favor of its own interpretation which "'will effectuate the reasonable result intended.'" Id. at 25 (quoting Laudig v. Laudig, 624 A.2d 651, 654 (Pa. Super. Ct.) appeal denied, 634 A.2d. 224 (Pa. 1993)).

Allegheny International argues that Allegheny Ludlum's construction "lead[s] to an absurdity," because it is inconsistent with the express provision in the 1986 agreement (also referenced in the first clause of the release), which provides for the dismissal with prejudice of all proceedings pending between the parties including the 1985 insurance costs suit. We agree that Allegheny Ludlum's construction is inconsistent with the dismissal with prejudice of pending insurance cost proceedings because such claims are based on obligations under the 1980 stock purchase agreement which were supposed to have been performed before February 19, 1986. Under Allegheny Ludlum's construction, the second clause of the release

_preserves_ claims based on obligations under the 1980 stock purchase agreement if these obligations were to be performed "at or prior to February 19, 1986."

This argument also is not determinative, however, because Allegheny International's construction of the second clause suffers from the same infirmity. The insurance costs proceedings pending when the 1986 agreement and release were executed also were based on the 1981 insurance agreement. Thus, Allegheny International's construction of the second clause of the release to preserve claims based on obligations under other agreements if the obligations were supposed to be performed "at or prior to February 19, 1986" also seems inconsistent with the dismissal with prejudice of pending insurance cost proceedings.

Overall, we conclude that the language of the second clause of the release is "reasonably susceptible" to both Allegheny International's construction and Allegheny Ludlum's construction. Hutchison v. Sunbeam Coal Corp., 519 A.2d at 390 (citations omitted).[12] Thus, the release is patently ambiguous, and we must reverse the district court's grant of summary judgment in favor of Allegheny International on this basis.

Because of our holding that the contract is patently ambiguous, we do not reach the question of whether the contract

---

[12]. We reject Allegheny Ludlum's argument that its construction of the second clause of the release is "the _only_ plausible reading," and that, therefore, the release is unambiguous. See Allegheny Ludlum br. at 19.

is latently ambiguous as well.[13]  As a corollary, we also need
not decide the scope of extraneous evidence admissible under
Pennsylvania law to demonstrate that a contract is latently
ambiguous.  Of course, upon remand, the trier of fact must look
to extraneous evidence to determine the contracting parties'
intent.  The scope of extraneous evidence admissible to interpret
the meaning of an ambiguous contract (as distinguished from
determining whether or not the contract is in fact ambiguous) is
not before us on this appeal, and in the first instance should be
decided by the district court.

Allegheny Ludlum urges that we should go further than
simply reversing the summary judgment in favor of Allegheny
International, as it argues that even if we conclude that the
release is ambiguous, we should grant its motion for summary
judgment because Allegheny International failed to meet its
burden to respond to Allegheny Ludlum's motion under Fed. R. Civ.
P. 56.  See Allegheny Ludlum br. at 21-22.  According to
Allegheny Ludlum, it is entitled to summary judgment because
Allegheny International failed to refute the evidence of the
parties' intent contained in affidavits it submitted which, if
accepted, would establish that the release bars this action.  Id.
However, we have no need to describe these affidavits in detail
because there is extrinsic evidence which tends to support a

---

[13].  In fact we cannot reach that point because an agreement is
latently ambiguous only when extraneous or collateral facts make
uncertain language which facially is clear and unambiguous.
Steuart v. McChesney, 444 A.2d at 663.  Thus, by definition, an
agreement can be latently ambiguous only if it is patently clear.

conclusion that the release does not bar this action. See, e.g., app. at 1325-26 (May 5, 1988 letter from Allegheny Ludlum to Allegheny International recognizing that Allegheny International primarily was responsible for protesting the IRS's initial disallowance of the tax refund for which Allegheny International now seeks reimbursement), id. at 1675 (February 1989 stipulation recognizing that Allegheny Ludlum still may have obligations to Allegheny International under the 1980 stock purchase agreement). Thus, a dispute of fact remains. Accordingly, we will affirm the denial of Allegheny Ludlum's motion for summary judgment on Allegheny International's tax refund claim, and unless we determine that the dismissal with prejudice of Allegheny International's 1985 suit for insurance costs precludes the insurance costs claim, we also will affirm the denial of Allegheny Ludlum's motion for summary judgment on that claim.

## B.   Dismissal of the State Case

As we have indicated, in 1985 Allegheny International filed suit to recover insurance costs that it claimed Allegheny Ludlum owed it under the 1980 stock purchase agreement and the 1981 insurance agreement. However, in the 1986 agreement, Allegheny International stated that it would "withdraw and cause to be dismissed with prejudice as to all parties all legal proceedings" pending between Allegheny International and Allegheny Ludlum including its insurance claim. See 1986 agreement, at 2 (Allegheny Ludlum br. Tab F). Subsequently, on February 28, 1986, the state court issued an order approving a

stipulation by the parties dismissing the 1985 suit with prejudice.  See app. at 425.  Allegheny International's 1985 suit sought reimbursement for insurance costs it already had incurred on behalf of Allegheny Ludlum as well as a declaratory judgment entitling it to reimbursement for insurance costs it would incur on Allegheny Ludlum's behalf in the future.  Id. at 155-64.  In its present insurance costs claim, Allegheny International seeks reimbursement for the insurance costs it has incurred on Allegheny Ludlum's behalf since March 1, 1986.  Id. at 1647-50 (Allegheny International's Third Amended Pretrial Statement).

The magistrate judge concluded that the dismissal with prejudice of Allegheny International's 1985 state court suit for insurance costs did not entitle Allegheny Ludlum to judgment on the pleadings because Allegheny International sought reimbursement only for insurance payments it made on Allegheny Ludlum's behalf "in and after 1989" which "thus were not part of that state law action."[14]  See magistrate judge's report, at 10 (Allegheny Ludlum br. Tab C).  According to the magistrate's report, this allegation raised a question of material fact which precluded granting a judgment on the pleadings.  Id.

Allegheny Ludlum argues that the district court "erred in ruling, as a matter of law, that the dismissal with prejudice of the 1985 Insurance Lawsuit did not bar relitigation of [Allegheny International's] insurance cost claim."  See Allegheny

_____

[14].  We are confident that the magistrate judge intended to indicate 1986.

Ludlum br. at 37.  Allegheny Ludlum concedes that Allegheny

International's present insurance costs claim does not seek

reimbursement for any costs it incurred on behalf of Allegheny

Ludlum prior to the dismissal of its 1985 suit.  Id. at 39.

However, according to Allegheny Ludlum, the dismissal of the 1985

suit bars Allegheny International's present insurance costs suit

because the 1985 suit sought not only reimbursement for insurance

costs Allegheny International already had incurred, but also a

judgment declaring that all future claims costs it would incur on

Allegheny Ludlum's behalf were to be paid pursuant to the 1981

insurance agreement.  Id.; see app. at 163.  Our review of the

district court's conclusion is plenary.

Federal courts must "give the same preclusive effect to

state court judgments that those judgments would be given in the

courts of the State from which the judgments emerged."  Kremer v.

Chemical Constr. Corp., 456 U.S. 461, 466, 102 S.Ct. 1883, 1889

(1982) (citing 28 U.S.C. § 1738) (footnote omitted); see also

Davis v. United States Steel Supply, 688 F.2d 166, 170 (3d Cir.

1982), cert. denied, 460 U.S. 1014, 103 S.Ct. 1256 (1983).  This

principle is embodied in 28 U.S.C. § 1738, which provides that

state court judgments:

> shall have the same full faith and credit in
> every court within the United States and its
> Territories and Possessions as they have by
> law or usage in the courts of such State.

Under Pennsylvania law, the doctrine of res judicata

holds that "'a final valid judgment upon the merits by a court of

competent jurisdiction bars any future suit between the parties

or their privies, on the same cause of action.'" Keystone Bldg. Corp. v. Lincoln Sav. and Loan Ass'n, 360 A.2d 191, 194 (Pa. 1976) (citations omitted).

> Application of the doctrine of res judicata requires the concurrence of four elements. They are: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; [and] (4) identity of the quality in the persons for or against whom the claim is made.

City of Pittsburgh v. Zoning Bd. of Adjustment, 559 A.2d 896, 901 (Pa. 1989) (citations omitted); see also Davis v. United States Steel Supply, 688 F.2d at 170-71 (applying Pennsylvania law). Moreover, "'[i]t is well settled, as a general proposition, that a judgment or decree, though entered by consent or agreement of the parties, is res judicata to the same extent as if entered after contest.'" Keystone, 360 A.2d at 194 n.6 (citation omitted). See also Gambocz v. Yelencsics, 468 F.2d 837, 840 (3d Cir. 1972) ("[d]ismissal with prejudice constitutes an adjudication of the merits as fully and completely as if the order had been entered after trial") (citing Lawlor v. National Screen Serv. Corp., 349 U.S. 322, 327, 75 S.Ct. 865, 868 (1955)). Thus, the fact that the dismissal with prejudice of the 1985 suit was based upon a stipulation by the parties is irrelevant.

Nonetheless, we conclude that the dismissal with prejudice of the 1985 suit is not res judicata in Allegheny International's present suit for insurance costs. Although the suits involve the same parties, they do not involve the same causes of action. In its present insurance costs claim,

Allegheny International is suing for reimbursement of expenses it had not even incurred at the time that its 1985 suit was dismissed with prejudice. The fact that Allegheny International's 1985 suit included a claim for declaratory judgment regarding its rights to the reimbursement of future insurance expenses it would incur on behalf of Allegheny Ludlum should not bar Allegheny International's present claim for expenses incurred subsequent to the dismissal of the 1985 suit.[15]

---

[15]. Allegheny Ludlum cites Exner v. Exner, 407 A.2d 1342 (Pa. Super. Ct. 1979), and Mintz v. Carlton House Partners, Ltd., 595 A.2d 1240 (Pa. Super. Ct. 1991) in support of its argument that the dismissal with prejudice bars Allegheny International's present claim for costs incurred subsequent to the dismissal of the earlier action. But these cases are distinguishable.

The plaintiff in Exner first filed actions in assumpsit alleging breaches of a separation agreement and then filed an action in equity alleging breaches of the separation agreement and seeking specific performance of the separation agreement. The court in Exner entered judgment in the equitable action and ordered specific performance of the separation agreement. Subsequently, the plaintiff filed a motion for summary judgment in the consolidated assumpsit actions alleging breaches of the separation agreement. The Exner court held that the assumpsit actions were barred by the judgment in the equitable action based in part on the fact that "[t]he complaint in equity recited all prior defaults, including those alleged in the prior assumpsit actions . . . [and thus,] the causes of action alleged in the consolidated assumpsit actions were included among the breaches of contract averred and decided in the equity action." Exner, 407 A.2d at 1344. Thus, this case is distinguishable as Allegheny International's previous complaint did not and could not allege the "defaults" alleged in the complaint before us.

In Mintz, the court held that the plaintiffs' claims alleging that the defendant breached their lease agreement already had been fully discharged by the bankruptcy court's entry of an order confirming the defendant's plan of reorganization. The court based its determination that the doctrine of res judicata barred plaintiffs' claims in part on the finding that although plaintiffs may have incurred damages subsequent to the confirmation of defendant's plan of reorganization, the alleged

As the United States Supreme Court held in <u>Lawlor v. National Screen Serv. Corp.</u>, 349 U.S. 322, 328, 75 S.Ct. 865, 868 (1955), while a "judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case."[16] The plaintiffs in <u>Lawlor</u> had brought an antitrust action seeking, in part, injunctive relief, that was dismissed with prejudice in 1943 pursuant to a settlement agreement.  Subsequently, they brought a second action alleging antitrust violations based on conduct subsequent to the 1943 judgment, and the court held that the earlier judgment did not bar the action.  Moreover, the court noted that its conclusion was "unaffected by the circumstance that the 1942 complaint sought, in addition to treble damages, injunctive relief which, if granted, would have prevented the illegal acts now complained of."  <u>Id</u>. at 328, 75 S.Ct. at 869.

(..continued)
breach occurred prior to the confirmation of defendant's plan of reorganization.  <u>Mintz</u>, 595 A.2d at 1244.  Thus, <u>Mintz</u> is distinguishable because the breaches on which Allegheny International bases its present suit occurred after the entry of judgment in the 1985 suit.

[16].  <u>See</u> <u>also</u> <u>Federated Dep't. Stores, Inc. v. Moitie</u>, 452 U.S. 394, 398, 101 S.Ct. 2424, 2428 (1981) ("[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or <u>could have been raised</u> in that action.") (citations omitted) (emphasis added); <u>Alexander & Alexander, Inc. v. Van Impe</u>, 787 F.2d 163, 166 (3d Cir. 1986) (<u>res</u> <u>judicata</u> "applies only to claims arising <u>prior</u> to the entry of judgment.  It does not bar claims arising <u>subsequent</u> to the entry of judgment and which did not then exist or could not have been sued upon in the prior action.") (citation omitted).

We think that the Pennsylvania Supreme Court would follow the logic of <u>Lawlor</u> in the situation before us. In reaching this conclusion, we recognize that when declaratory relief is sought it may be possible to sue on a claim which could be regarded as not yet existing. Yet we think that it is reasonable to consider that when both damages for past conduct and declaratory relief governing future events are sought, the parties naturally would focus their attention on the existing monetary claims. Indeed, we believe that a court should be cautious in according <u>res</u> <u>judicata</u> effect to the dismissal of the declaratory judgment aspects of a combination damages and declaratory judgment action, lest a settlement leading to a dismissal with prejudice could have unintended consequences. For example, a delinquent defendant with an ongoing relationship with a plaintiff, by making its account current, might obtain a dismissal of an action against it for the overdue payments and for declaratory relief that it will be liable for future payments. In such a situation it would be remarkable if the defendant could use the dismissal of the action as a defense in a later case if it failed to make the future payments as its obligation to make them matured.

Furthermore, in a technical sense it is questionable whether a voluntary dismissal with prejudice of a claim for declaratory relief should be regarded as extinguishing the anticipated substantive claim underlying the declaratory judgment action, for such a dismissal is in terms simply a disposition of a claim for declaratory relief. Accordingly, it seems

unreasonable to regard the disposition as the equivalent of a disposition of the plaintiff's substantive claims for monetary relief as the claims mature. Indeed, at a time when the claim for declaratory relief is dismissed, the circumstances on which future liability later may be predicated will not even exist. Overall, we are convinced that whatever might be true in other contexts, for res judicata purposes a cause of action for declaratory relief with respect to a party's obligation to make payments in the future should not be regarded as a cause of action for the recovery of the payments as they become due. In these circumstances, we conclude that the Allegheny International's present claim for insurance costs should not be regarded as stating the same cause of action asserted in the state litigation. Consequently, we apply Pennsylvania law to hold that the dismissal of Allegheny International's 1985 suit does not bar its present claim.[17]

---

[17]. Of course, when there is an actual adjudication of an issue in a declaratory judgment action regarding a debt not due, the adjudication may be preclusive under collateral estoppel principles as to that issue in a later action to recover the debt. Thus, our result in no way undermines the effectiveness of a declaratory judgment. But collateral estoppel does not apply here because the dismissal with prejudice of the 1985 suit did not actually "decide" or "adjudicate" any issues. See City of Pittsburgh, 559 A.2d at 901 ("[c]ollateral estoppel applies if (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment.") (citations omitted).

C.  Sunbeam-Oster's standing

In a second and separate motion for summary judgment, Allegheny Ludlum challenged Sunbeam-Oster Company's right to prosecute this action on behalf of Allegheny International because Sunbeam-Oster did not file a motion to amend the caption of the case or otherwise substitute itself for Allegheny International as plaintiff.  See Allegheny Int'l, Inc., slip op. at 30.  The district court denied Allegheny Ludlum's motion, holding that Allegheny Ludlum had waived any defense it might have had to Sunbeam-Oster's prosecution of this action by raising it "as late in the litigation as it has."  Id. at 31 (citing 6A Charles A. Wright, et al., Federal Practice and Procedure § 1554, at 406-07 (1990)).  We agree.  Any objection alleging that the plaintiff is not the real party in interest "should be done with reasonable promptness."  See 6A Charles A. Wright, et al., Federal Practice and Procedure § 1554, at 407 (1990). "Otherwise, the court may conclude that the point has been waived by the delay and exercise its discretion to deny motions on the ground of potential prejudice."  Id. at 407-08.  See also Gogolin & Stelter v. Karn's Auto Imports, Inc., 886 F.2d 100, 102-03 (5th Cir. 1989) (holding that defendant waived real-party-in-interest defense by "untimely assertion," where defendant raised it for the first time in a motion for directed verdict), cert. denied, 494 U.S. 1031, 110 S.Ct. 1480 (1990).[18]

---

[18].  In light of our decision, we need not reach an argument advanced by Allegheny Ludlum that the district court erred in

                        III.  CONCLUSION

          In view of the aforesaid, we will reverse the district

court's order of summary judgment of April 7, 1994, in favor of

Allegheny International, but we will affirm its denial of

Allegheny Ludlum's motions for summary judgment.  We will remand

the matter to the district court for further proceedings

consistent with this opinion.  The parties will bear their own

costs on this appeal.

(..continued)
determining as a matter of law that Allegheny International was
entitled to the interest the IRS paid on the refund as a tax
benefit, and Allegheny Ludlum's further argument that the court
should not have awarded Allegheny International prejudgment
interest for certain litigation delay.